IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IAN DENNISON, #A1026519, ) | CIV. NO. 16-00389 JMS/KJM |
| ) | |
| Plaintiff, ) | ORDER DISMISSING COMPLAINT |
| ) | WITH LEAVE TO AMEND |
| vs. ) | PURSUANT TO 28 U.S.C. |
| ) | §§ 1915(e)(2) & 1915A(b) |
| WAIAWA CORR. FACILITY, ) | |
| SCOTT HARRINGTON, ) | |
| LIEUTENANT ANTHONY ) | |
| MONTEILH, OFFICER ) | |
| ARMITAGE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND
PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

Before the court is pro se Plaintiff Ian Dennison's prisoner civil rights Complaint. Dennison is incarcerated at the Saguaro Correctional Center located in Eloy, Arizona, but complains of incidents that occurred at the State of Hawaii's Waiawa Correctional Facility ("WCF") in December 2015. Dennison names WCF, its Warden Scott Harrington, and correctional officers Lieutenant Anthony Monteilh, and Officer Armitage (collectively, "Defendants") in their official capacities.

Dennison alleges Defendants violated his rights to due process and equal protection under the Sixth and Fourteenth Amendments to the United States Constitution during and after a disciplinary hearing.  Dennison's Complaint is DISMISSED for failure to state a cognizable claim for relief.  *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  He is granted leave to amend to correct the deficiencies discussed below, on or before September 16, 2016.

## I.  BACKGROUND[1]

Dennison was incarcerated at WCF between October 6 and November 19, 2015.[2]  He alleges that on or about November 18, 2015, Officer Armitage noted that Dennison's eyes were red, claimed that he was intoxicated, and issued him a misconduct report.  Lieutenant Monteilh investigated the charges, and Dennison states that his urinalysis test was negative.

Prison officials conducted a disciplinary hearing on December 10, 2015, after Dennison's transfer from WCF.  Three officers testified that Dennison appeared intoxicated (notwithstanding the negative urinalysis); Dennison was not

---

[1] The court's recitation of facts is taken from the Complaint and publicly available documents, and are accepted as true for the purposes of this Order, but should not be construed as findings by the court.

[2] WCF is a minimum security prison that "provides an environment that helps inmates successfully re-enter the community from prison.  All inmates participate in education or substance abuse treatment programs."  *See* http://dps.hawaii.gov/wc.

permitted to present medical records clarifying why his eyes appeared red. Dennison was found guilty of violating Department of Public Safety ("DPS") Policy and Procedures Manual, COR.13.03.4.0.3a.7(9), which states:

> .3 High Misconduct Violations (7)
>
> a. 7(9)   Possession, introduction, manufacturing or use of any narcotic paraphernalia, drugs, intoxicants, synthetic drug composition or alcoholic beverages not prescribed for the individual by the medical staff, which includes any form of being intoxicated.

Although sanctions for a high misconduct violation may include disciplinary segregation for up to thirty days and any other sanction beyond disciplinary segregation, COR.13.03.3(b), Dennison does not detail what sanction was imposed. Although he appealed, Warden Harrington upheld the hearing officers' decision. Dennison alleges that, as a result of the misconduct finding, he was denied parole and must complete additional mandatory programs for parole eligibility. He also says his classification status was increased.

Dennison claims that DPS Policy and Procedures require "representation and confrontation of evidence." Compl., Doc. No. 1, PageID #6. He alleges no evidence was presented against him (other than three officers' testimony that he appeared intoxicated), and that he was, therefore, treated differently than similarly

situated inmates. He claims this violated his constitutional rights to due process and equal protection. Dennison seeks damages, expungement of the disciplinary report, a new parole hearing, or immediate parole.

## II. LEGAL STANDARD

The court must screen all prisoner civil actions seeking redress from a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from an immune defendant must be dismissed. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e(c)(1). The court must set conclusory factual allegations aside, accept non-conclusory factual allegations as true, and determine whether these allegations state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility does not mean "probability," but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 555.

Leave to amend should be granted if it appears the plaintiff can correct the complaint's defects. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc). A court has the discretion to dismiss a complaint without leave to amend, however, when "it is clear that the complaint could not be saved by any amendment." *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III. **DISCUSSION**

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation and internal quotation marks omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983. Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

A.     **Official Capacity Claims**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007).  Defendants named in their official capacities are subject only to suit under § 1983 "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law."  *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D. Hawaii Apr. 23, 2013) (*quoting Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010)); *see also Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989)  ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Dennison names Harrington, Monteilh, and Armitage in their official capacities (in effect, suing the State for their allegedly illegal conduct).  To the extent Dennison seeks damages against Harrington, Monteilh, and Armitage in their official capacities, those claims are DISMISSED with prejudice.  Dennison may amend his Complaint to seek damages against Harrington, Monteilh, and

Armitage by naming them in their individual capacities (if he can correct the Complaint's other deficiencies discussed below).

Additionally, WCF is not a "person" within the meaning of § 1983, and cannot be sued under § 1983. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 53-54 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Gilbreath v. Cutter Biological, Inc.*, 931 F.2d 1320, 1327 (9th Cir. 1991). Claims against WCF are DISMISSED with prejudice.

**B.     Due Process in Prison Disciplinary Hearing**

To state a due process violation, a plaintiff must first establish a liberty interest for which protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). If no protected liberty interest is at stake, no process is required. *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). That is, if the challenged prison practice or sanction is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is

no liberty interest directly under the Constitution. *Meachum*, 427 U.S. at 225; *see also Hewitt*, 459 U.S. at 466-70.

A state-created liberty interest may also arise through state statutes, prison regulations, and policies. *Chappell*, 706 F.3d at 1063. State liberty interests must be of "real substance" however, meaning freedom from restraint or state action that (1) imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) "will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 477-87, 484, 487. And, "the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *See Wilkinson*, 545 U.S. at 222-23.

First, to the extent Dennison alleges a liberty interest based on the denial of parole and allegedly new requirements for mandatory programs to be eligible for parole, he fails to state a claim. Hawaii's inmates have no federal or state-created liberty interest in parole. *See Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981) (holding there is no constitutionally-protected interest in parole even after a parole date is set); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7

(1979); *Rideout v. Haw. Paroling Auth.*, 2014 WL 1571286, at *3 (D. Haw. April 17, 2014) (recognizing that no state-created liberty interest in parole is created under Hawaii's parole regime, and collecting District of Hawaii cases); *Turner v. Haw. Paroling Auth.*, 93 Haw. 298, 302, 1 P.3d 768, 772 (2000); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992).

Second, to the extent Dennison asserts that the allegedly erroneous information in his institutional file *may* result in a diminished *future* possibility of parole, his claim fails. "The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at his parole hearing in order to explain the circumstances behind his misconduct record." *Sandin*, 515 U.S. at 487. The mere possibility that a disciplinary action taken against a prisoner could later influence a prisoner's chance at early release is "too attenuated" to implicate the Due Process Clause. *Id.*

Third, to the extent that Dennison alleges he possesses a liberty interest in an accurate prison file, and suggests expungement of the December 2015 disciplinary violation report would result in a favorable parole ruling, he fails to state a claim. Success on the merits of Dennison's claims (which would support expungement), will "not necessarily lead to a grant of parole." *See Nettles v. Grounds*, --- F.3d ---, 2016 WL 4072465, *9 (9th Cir. July 26, 2016). Under

Hawaii law, the Hawaii Paroling Authority ("HPA") considers several factors to determine a prisoner's suitability for parole, including reference to a validated "risk assessment" actuarial tool, the inmate's criminal history (to evaluate the likelihood of reoffending), recent prison misconducts, any pending felony charges, and the prisoner's stated parole plan.  *See* Haw. Rev. Stat. § 706-670(1).  A prison rules violation is therefore only one of the factors considered by the HPA, and "the presence of a disciplinary infraction does not compel the denial of parole, nor does an absence of an infraction compel the grant of parole."  *Nettles*, 2016 WL 4072465, at *9 (citing *Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)).  Under Hawaii law, the HPA can still deny Dennison parole even if he is successful in expunging the December 2015 disciplinary report.

     Fourth, Dennison fails to allege any sanction he received based on the allegedly inaccurate information in his file.  Although the court can infer that Dennison was transferred from WCF after the incident but before the disciplinary hearing, apparently based on the charges alone, Dennison fails to allege facts showing that this transfer subjected him to atypical or significant hardship or will inevitably affect the duration of his sentence.  Prisoners have no liberty interest in freedom from transfer within the prison, within the state, or to out-of-state facilities.  *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum*, 427

U.S. at 224-25; *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (citing *Meachum*, 427 U.S. at 224-25; *Olim*, 461 U.S. at 244-48).

Finally, Dennison has no liberty interest in his classification status under the Fourteenth Amendment. *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987); *see Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (stating that the Due Process Clause is not implicated by federal prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"). Again, Dennison fails to describe how his changed classification status imposes atypical or significant hardship or inevitably affects the duration of his sentence and cannot form the basis for a due process claim. Dennison's due process claims are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), with leave granted to amend.

**C.     Claims Against Warden Harrington**

Dennison's only claim against Warden Harrington is that he upheld the disciplinary hearing decision on appeal. There is no federal constitutional right to a prison administrative appeal or grievance system. *See Ramirez*, 334 F.3d at 860; *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of

Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for failing to process a grievance or appeal or for failing to find in the prisoner's favor. Claims against Warden Harrington are DISMISSED with leave to amend.

**D.     Equal Protection**

The Equal Protection Clause directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bell v. Wolfish*, 441 U.S. 520, 545-47 (1979) (holding that convicted prisoners are entitled to protection under Equal Protection Clause). To establish an equal protection violation, a prisoner must show that he was intentionally discriminated against based on his membership in a protected class. *See Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (discussing elements of equal protection claim in § 1983 civil rights action). In the alternative, a prisoner must show that he was intentionally treated differently from other similarly situated inmates without a rational basis for such disparate treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (involving plaintiff who "did not allege membership in a class or group"); *see also N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (holding that an equal

protection claim brought by "class of one" is "premised on unique treatment rather than on a classification").

Dennison does not allege that he is a member of a protected class and that Defendants intentionally discriminated against him based on his membership in such class. He also fails to allege facts that show another similarly situated inmate was treated differently than him. That is, Dennison fails to allege that another inmate who was accused of intoxication despite a negative urinalysis was treated differently than he and was allowed to remain at WCF. Rather, Dennison concludes that, because DPS Policies and Procedures provide for "representation and confrontation of evidence," and he was allegedly not afforded either, he was denied equal protection. A violation of a state prison's policies, procedures, or rules is not actionable under § 1983, unless such violation also impacts federal rights. *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)); *Selsor v. Weaver*, 2016 WL 4191882, at *4 (E.D. Cal. Aug. 8, 2016). Dennison fails to state an equal protection violation and this claim is DISMISSED with leave to amend.

## IV.  **LEAVE TO AMEND**

Dennison's Complaint is DISMISSED. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1). He may file an amended complaint on or

before September 16, 2016, that cures the deficiencies noted in this Order. Dennison is notified that he must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he elects to amend his pleading.

An amended complaint generally supersedes the original complaint. *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 102, 1008 (9th Cir. 2015). The court will not refer to the original pleading to make an amended complaint complete, although it will not ignore contradictory statements of fact between an original and amended complaint. Local Rule 10.3 further requires that an amended complaint be complete in itself without reference to any prior pleading. Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] be repled in a[n] amended complaint to preserve them for appeal. . . . [but] claims [that are] voluntarily dismissed [are] . . . waived if not repled."). In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

///

///

## V. 28 U.S.C. § 1915(g)

If Dennison fails to timely file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal shall count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment *in forma pauperis* under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. CONCLUSION

(1)  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).

(2) Dennison may file an amended complaint curing the deficiencies in his claims on or before September 16, 2016.

(3) Failure to timely amend the Complaint and cure its pleading deficiencies will result in dismissal of this action with prejudice for failure to state a claim, and Dennison shall incur a strike pursuant to 28 U.S.C. § 1915(g).

(4)  The Clerk of Court is DIRECTED to mail Dennison a prisoner civil rights complaint form to assist him in complying with the directions in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 16, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Dennison v. Waiawa Corr. Facility,* 1:16-cv-00389 JMS/KJM jms scr'g 2016 (DP drug test trsf)