IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

IAN DENNISON, #A1026519,   )   CIV. NO. 16-00389 JMS/KJM
   )
       Plaintiff,   )   ORDER DISMISSING AMENDED
   )   COMPLAINT WITH LEAVE TO
       vs.   )   AMEND
   )
SCOTT HARRINGTON, et al.,   )
   )
       Defendants.   )
_____   )

## ORDER DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND

Before the court is pro se Plaintiff Ian Dennison's first amended prisoner civil rights Complaint ("FAC"). Dennison names Waiawa Correctional Facility ("WCF") Warden Scott Harrington, and WCF correctional officers Lieutenant Anthony Monteilh and Armitage (collectively, "Defendants") in their individual capacities. He alleges Defendants violated his rights to due process and equal protection regarding disciplinary proceedings that occurred in December 2015.

For the following reasons, the FAC is DISMISSED for failure to state a cognizable claim for relief. *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Dennison is granted leave to amend to correct the deficiencies discussed below, on or before November 28, 2016.

# I.  BACKGROUND

## A.    Procedural History

On July 11, 2016, Dennison commenced this action by filing the original Complaint and an informal request to proceed in forma pauperis ("IFP").  ECF Nos. 1 and 2.  Dennison claimed that Defendants denied him due process and equal protection under the law when they falsely charged him with being intoxicated at WCF, denied his request to introduce evidence at his disciplinary proceedings, found him guilty, transferred him to the Halawa Correctional Facility ("HCF"), denied his grievance appeal, and increased his classification status.  He alleged these acts resulted in the Hawaii Paroling Authority's ("HPA") decision to deny him parole in January 2016 and impose additional conditions for early release.

On August 2, 2016, the court granted Dennison's amended IFP application. *See* ECF Nos. 5 and 6.

On August 16, 2016, the court dismissed the original Complaint with leave to amend, for Dennison's failure to state a claim.  Order, ECF No. 7.  Specifically, Dennison's claims against WCF and his damages claims asserted against Harrington, Monteilh, and Armitage in their official capacities were dismissed with prejudice.  Dennison's due process and equal protection claims were

dismissed without prejudice, with explicit notice of their legal deficiencies.  See

Order, ECF No. 7.  Dennison was granted until September 16, 2016, to file an

amended complaint.

On September 19, 2016, Dennison filed the FAC presently before the court

on screening.[1]  ECF No. 8.  The FAC's allegations are substantially similar to

those in the original Complaint, although it provides more detail and Dennison

attaches several exhibits to the FAC to support his claims.  Dennison realleges due

process and equal protection claims against Harrington, Monteilh, and Armitage in

their individual capacities only.

## B.    Allegations in the FAC[2]

On November 18, 2015, Officer Armitage and several other unidentified

officers encountered Dennison and inmate Nowicke in WCF building 9B E.

Armitage suspected Dennison was intoxicated because his eyes were red and

glassy, his speech was slurred, and he was unsteady.  *See* FAC, ECF No. 8,

PageID #72.  Armitage instructed Dennison to pack his belongings and go to the

medical unit where medical staff questioned him.  Dennison provided a urine

---

[1] Because Dennison signed the FAC on September 12, 2016, and it was mailed to the court on September 14, 2016, it is deemed timely under the "prison mailbox rule."  *See Houston v. Lack*, 487 U.S. 266, 271 (1988); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009).

[2] These facts are taken from the FAC and are accepted as true for the purposes of this Order, but should not be construed as findings by the court.

sample, that he asserts tested negative for drugs.  Dennison was then placed in

segregation at WCF.

On November 19, 2015, Dennison was transferred to the HCF

administrative segregation unit to await a disciplinary hearing.

On November 20, 2015, Dennison received a Notice of Report of

Misconduct and Hearing, that charged him with violation of DPS Policy and

Procedure COR13.03 4.0.3 a.7(9), which prohibits:

> Possession, introduction, manufacturing or use of any narcotic
> paraphernalia, drugs, intoxicants, synthetic drug composition or
> alcoholic beverages not prescribed for the individual by the medical
> staff, which includes any form of being intoxicated.

Lieutenant Monteilh investigated these charges.

On December 10, 2015, Monteilh chaired Dennison's disciplinary hearing.

At the hearing, three officers testified that Dennison had appeared intoxicated on

November 18, 2016, because (1) his eyes were red and glassy; (2) he was shaking,

unsteady, confused, and dazed; and (3) his speech was slurred.  Monteilh denied

Dennison's request to introduce his medical records.  Dennison alleges these

records would have shown that he had been treated several times before the

incident for irritated, red eyes (due to allergies) at HCF and WCF, thus, explaining

why his eyes were red.

4

On December 17, 2015, Monteilh found Dennison guilty and sanctioned him to thirty-days on "lockdown."  FAC, ECF No. 8, PageID #71.  Dennison was credited with his twenty-two days in administrative segregation and served the remaining eight days in HCF Special Holding.  He was released from Special Holding on December 18, 2015.

On February 3, 2016, Warden Harrington upheld Monteilh's decision and denied Dennison's grievance appeal.  *Id.*, PageID #75.

On or about February 8, 2016, the HPA denied Dennison parole based, at least in part, on this misconduct.  *See id.*, PageID #80.  The HPA recommended that Dennison participate in all "recommended programs, i.e., work furlough and etc.," and scheduled another parole hearing for January 2017.  *Id.*

On April 4, 2016, Dennison's third-step appeal was denied.  *Id.*, PageID #78.

Dennison seeks expungement of the disciplinary report, damages, and a new parole hearing.

## II.  LEGAL STANDARD

The court must screen all prisoner civil actions seeking redress from a governmental entity, officer, or employee.  28 U.S.C. § 1915A(a).  Complaints or claims that are frivolous, malicious, fail to state a claim, or seek relief from an

immune defendant must be dismissed.  28 U.S.C. § 1915(e)(2); 28 U.S.C.

§ 1915A(b); 42 U.S.C. § 1997e(c)(1).  During screening, the court sets conclusory

factual allegations aside, accepts non-conclusory factual allegations as true, and

then determines whether these allegations state a plausible claim for relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009) (citing *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  Plausibility does not mean "probability," but it

requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

at 678.

      To state a claim, a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

complaint that lacks a cognizable legal theory or alleges insufficient facts under a

cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1990).  "Threadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556

U.S. at 679; *Twombly*, 550 U.S. at 555.

      Courts must construe pro se "pleadings liberally . . . to afford the petitioner

the benefit of any doubt."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)

(citations omitted).  The district court "should not dismiss a pro se complaint

without leave to amend unless 'it is absolutely clear that the deficiencies of the

complaint could not be cured by amendment.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir. 1988) (per curiam)).  Further, "the district court must provide the [pro se] litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar*, 698 F.3d at 1212 (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).  "Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors." *Karim Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).  When "it is clear that the complaint could not be saved by any amendment," however, dismissal with prejudice is allowed.  *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## III. <u>DISCUSSION</u>

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation and internal quotation marks omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C.

§ 1983.  Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A.   Due Process

Dennison broadly complains that Defendants violated his right to due process because (1) there was no evidence to support Armitage's misconduct report; (2) Monteilh both investigated his charges and chaired his disciplinary hearing, allegedly in violation of DPS rules; (3) Monteilh denied Dennison's request to introduce evidence that his eyes were red due to allergies, and found him guilty despite Dennison's negative urinalysis; and (4) Harrington upheld Monteilh's decision and denied Dennison's grievance.

Dennison was thereafter transferred to a higher security institution, his custody classification was increased, the HPA denied him parole, and he alleges he may not complete the HPA's recommended programs before his next parole hearing in January 2017.  To be clear, Dennison does not allege that his full term of sentence has been increased.  Rather, he complains that he was denied parole and his eligibility for early release on parole will be delayed.  This claim fails for several reasons.

To state a due process violation, a plaintiff must first establish a liberty interest for which protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 466-68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 481-84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013). If no protected liberty interest is at stake, no process is required. *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989); *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002). That is, if the challenged prison practice or sanction is "within the normal limits or range of custody which the conviction has authorized the State to impose," there is no liberty interest directly under the Constitution. *Meachum*, 427 U.S. at 225; *see also Hewitt*, 459 U.S. at 466-70.

## 1.   No Liberty Interest Under the Due Process Clause

First, Dennison has no direct or state-created liberty interest in early release on parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); *Mujahid v. Apao*, 795 F. Supp. 1020, 1024 (D. Haw. 1992); *Rideout v. Haw. Paroling Auth.*,

9

2014 WL 1571286, at *3 (D. Haw. April 17, 2014) (recognizing that Hawaii's parole regime creates no liberty interest in parole and collecting District of Hawaii cases).

Second, Dennison has no direct liberty interest in retaining a particular custody status, remaining at a particular prison, or participating in rehabilitation or educational programs. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding prisoners have no liberty interest in a particular classification status or rehabilitation); *see also Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983) (holding prisoners have no right to remain in prison of choice or prevent a transfer); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985).

Because Dennison has no liberty interest in early release on parole, a particular custody classification, rehabilitation programs, or remaining at WCF, he has no right to the procedural due process requirements delineated in *Wolff v. McDonnell*, 418 U.S. 539, 563-72 (1974).

### 2.     *No State-created Liberty Interest*

Dennison asserts that he was denied due process because Monteilh violated DPS policies and procedures by investigating his charges *and* chairing his disciplinary hearing.  He further claims Monteilh violated state rules and

regulations by denying Dennison's request for unnamed witnesses and to introduce evidence explaining his red eyes.

State rules and regulations may create a liberty interest in "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (1995) (citations omitted); *Chappell*, 706 F.3d at 1063.

> Three factors generally determine atypical and significant hardship:
>
> (1) whether the challenged action "mirrored those conditions imposed upon inmates in . . . administrative segregation and protective custody," and thus comported with the prison's discretionary authority;
>
> (2) the duration of the condition, and the degree of the restraint imposed; and
>
> (3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Chappell*, 706 F.3d at 1064 (citing *Sandin*, 515 U.S. at 486-87).

First, in light of the HPA's letter setting another parole consideration hearing in January 2017, it is clear that Dennison's disciplinary sanction will not inevitably lengthen the term of his sentence.

11

Second, Dennison's twenty-two day confinement in administrative segregation *alone* does not show atypical and significant hardship sufficient to create a right to due process. *See Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest."). Nor does his eight-day confinement in HCF Special Holding. *See Sandin*, 515 U.S. at 486 (finding thirty days in disciplinary segregation at HCF did not constitute atypical or significant hardship sufficient to invoke a state-created liberty interest); *Richardson v. Runnels*, 594 F.3d 666, 672 (9th Cir. 2010) (finding fifteen days disciplinary segregation did not invoke a liberty interest). Short durations of segregation are rarely deemed excessive or considered a major disruption to an inmate's environment. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (citing *Sandin*, 515 U.S. at 486).

Third, although given the opportunity to do so, Dennison again fails to assert *any* facts comparing the conditions in administrative segregation and in Special Holding with those in the HCF general population. *See* Order Dismissing Complaint With Leave to Amend, ECF No. 7, PageID #33, 35. He therefore fails to provide sufficient facts for the court to infer his confinement in segregation and Special Holding created an atypical and significant hardship giving rise to a state-created liberty interest.

12

Dennison's due process claims are again DISMISSED for failure to state a claim. Because it is unclear whether Dennison can assert further facts to support this claim, this dismissal is again with leave granted to amend.

### 3.    *Claims Against Warden Harrington*

Dennison provides no facts showing that WCF Warden Harrington had control over the conditions of Dennison's confinement in HCF segregation and Special Holding. Harrington cannot, therefore, be held responsible for any atypical or significant hardships that Dennison may have experienced at HCF. Rather, Dennison's due process claim against Warden Harrington is based solely on Harrington's denial of Dennison's grievance. As the court informed Dennison, there is no federal constitutional right to a prison administrative appeal or grievance system. *See Ramirez*, 334 F.3d at 860; *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993).

Harrington did not violate due process when he denied Dennison's grievance. Dennison's due process claims against Harrington are again DISMISSED. Because Dennison was given leave to amend his claims against

13

Harrington and has failed to allege any basis for Harrington's liability beyond his denial of the grievance, this dismissal is with prejudice.

## B.    Equal Protection

Dennison alleges Defendants violated his right to equal protection under the law because other inmates whose urinalysis tests were negative were not removed from programs and housing at WCF.  *See* FAC, ECF No. 8, PageID #74.

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  To state an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005) (citation and internal quotation marks omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).  If the action does not involve a suspect classification, the plaintiff must show that similarly situated people were intentionally treated differently without a rational basis for the disparate treatment.  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

14

First, Dennison does not allege that he is a member of a protected class and was intentionally treated differently because of his protected class.

Second, Dennison is not similarly situated to other inmates who simply tested negative for drugs, because Dennison fails to allege that these other inmates *also* exhibited other distinct signs of intoxication and were subjected to an investigation and disciplinary hearing at which testimony was given that refuted the negative urinalysis findings.

Third, this testimony from three correctional officers who observed Dennison's altered behavior notwithstanding his negative urinalysis, clearly provides a rational basis for differing treatment among inmates who test negative for drugs.   Dennison fails to state an equal protection violation and this claim is DISMISSED with leave to amend.

## IV.  LEAVE TO AMEND

Dennison's Complaint is DISMISSED.  28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).  He may file an amended complaint on or before November 28, 2016, that cures the deficiencies noted in this Order. Dennison must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he amends his pleading.

An amended complaint generally supersedes the original complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015).  The court will not refer to the original pleading to make an amended complaint complete, although it will not ignore contradictory statements of fact between an original and amended complaint.  Local Rule 10.3 further requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not named in the caption and claims dismissed without prejudice that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) ("[C]laims dismissed with prejudice [need not] be repled in a[n] amended complaint to preserve them for appeal. . . . [but] claims [that are] voluntarily dismissed [are] . . . waived if not repled.").  In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

## V.  <u>28 U.S.C. § 1915(g)</u>

If Dennison fails to timely file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under the "3-strikes" provision of 28 U.S.C. § 1915(g).  Under the 3-strikes provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis

under 28 U.S.C. § 1915

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1)  The Complaint is DISMISSED for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).  Specifically, Dennison's due process claims against Warden Harrington are DISMISSED WITH PREJUDICE. Dennison's remaining due process claims and equal protection claims are DISMISSED WITH LEAVE TO AMEND.

(2) Dennison may file an amended complaint curing the deficiencies noted above on or before November 28, 2016.

(3) Failure to timely amend and cure the pleading deficiencies noted herein will result in dismissal of this action with prejudice for failure to state a claim, and Dennison may incur a strike pursuant to 28 U.S.C. § 1915(g).

//

//

17

(4)  The Clerk of Court is DIRECTED to mail Dennison a prisoner civil

rights complaint form to assist him in complying with the directions in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 3, 2016.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Dennison v. Harrington, et al.*, 1:16-cv-00389 JMS/KJM jms scr'g 2016 (FAC DP drug test trsf)